TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 95-104 |
| of | : | |
| | : | May 16, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE MICHAEL C. FITZPATRICK, COUNTY COUNSEL, TRINITY COUNTY, has requested an opinion on the following question:

Is a non-incumbent candidate for the office of justice court judge elected at the June 1994 primary election for the term commencing on January 3, 1995, entitled to the office of municipal court judge commencing on January 3, 1995?

CONCLUSION

A non-incumbent candidate for the office of justice court judge elected at the June 1994 primary election for the term commencing on January 3, 1995, is entitled to the office of municipal court judge commencing on January 3, 1995.

ANALYSIS

In 1950 the Constitution was amended to reform the trial court system in California. From 1950 until 1995, each county had a superior court and municipal and justice courts depending upon its current population. The county boards of supervisors were empowered to establish judicial districts within their respective counties. In any judicial district containing a population of 40,000 or more, a municipal court with at least one judge was established by operation of law. Prior to 1995 section 5 of Article VI of the Constitution provided in part:

"The Legislature shall provide for the organization and prescribe the jurisdiction of municipal and justice courts. It shall prescribe for each municipal court and provide for justice courts the number, qualifications, and compensation of judges, officers and employees."

The Legislature carried out this constitutional mandate as well as other constitutional provisions by prescribing the organizational details to be followed upon a possible redistricting of judicial districts by the board of supervisors within a county (see Gov. Code, § 71040)[1] or upon the establishment by operation of law of a new municipal court by virtue of a population increase in an existing justice court district (see § 71043).

At the November 8, 1994 general election, the people adopted Proposition 191, amending sections 1 and 5 of article VI of the Constitution as follows:

"SEC. 1. The judicial power of this State is vested in the Supreme Court, courts of appeal, superior courts, *and* municipal courts, and justice courts. All courts are courts of record."

"SEC. 5. (a) Each county shall be divided into municipal court and justice court districts as provided by statute, but a city may not be divided into more than one district. Each municipal and justice court shall have one or more judges. *Each municipal court district shall have no fewer than 40,000 residents; provided that each county shall have at least one municipal court district. The number of residents shall be determined as provided by statute.*

*"(b) On the operative date of this subdivision, all existing justice courts shall become municipal courts, and the number, qualifications, and compensation of judges, officers, attaches, and employees shall continue until changed by the Legislature. Each judge of a part-time municipal court is deemed to have agreed to serve full time and shall be available for assignment by the Chief Justice for the balance of time necessary to comprise a full-time workload.*

"There shall be a municipal court in each district of more than 40,000 residents and a justice court in each district of 40,000 residents or less. The number of residents shall be ascertained as provided by statute.

"(c) The Legislature shall provide for the organization and prescribe the jurisdiction of municipal and justice courts. It shall prescribe for each municipal court and provide for each justice court the number, qualifications, and compensation of judges, officers, and employees.

"(b)

_____

[1] All references hereafter to the Government Code are by section number only.

*"(d)* Notwithstanding ~~the provisions of~~ subdivision (a), any city in San Diego County may be divided into more than one municipal court ~~or justice court~~ district if the Legislature determines that unusual geographic conditions warrant such division."[2]

Accordingly, Proposition 191 abolished justice courts in California on January 1, 1995, the operative date of the constitutional amendment.

Significantly, Proposition 191 retained the requirement that "[e]ach municipal court district shall have no fewer than 40,000 residents," but added a new requirement that "each county shall have at least one municipal court district." Prior thereto, because of population constraints, a rural county might have only one justice court, or as many as determined by the board of supervisors under its power to create judicial districts.

With this background in mind, we proceed to the facts which give rise to this request for our opinion. At the June 1994 primary election, the office of justice court judge for the Trinity County Justice Court was on the ballot. A candidate who was not the incumbent judge received a majority of the votes cast and was thus elected for the new term to commence on January 3, 1995. (§ 71145; *Brailsford* v. *Blue* (1962) 57 Cal.2d 335, 338.) However, on the operative date of Proposition 191 (January 1, 1995), the Trinity County Justice Court became a municipal court. The issue presented for resolution is whether the incumbent judge of the justice court or the individual elected at the June 1994 primary election was entitled to the office of judge of the municipal court on January 3, 1995. We conclude that the non-incumbent candidate-elect was entitled to the new office.

It must be conceded that on January 1, 1995, by operation of law, the incumbent justice court judge of the Trinity County Justice Court became the judge of the municipal court in Trinity County, and that he remained the municipal court judge at least through January 2, 1995. Furthermore, the person elected at the June primary election was elected to a justice court, not a municipal court. Based upon the statutes enacted before the adoption of Proposition 191 (and which currently exist), it might well appear that the incumbent justice court judge in Trinity County was entitled to the office of municipal court judge on January 3, 1995, and thereafter.

Section 71084 provides:

"Whenever a municipal court is established in a district in which a justice court was previously established or in a district formed from territory formerly included in justice court districts, the justice court shall cease to exist within the district for which the municipal court is established, and the term of office of the judges of justice courts situated wholly within such district shall terminate upon the selection and qualification of the first judges of the municipal court. The selection shall be made pursuant to Sections 71080 and 71081."

---

[2]Additions are in italics, and deletions are shown by strikeover.

Section 71080 states:

"(a) Upon the establishment of a municipal or justice court, the judges of existing courts inferior to the superior court in any city, township, or judicial subdivision situated wholly or partly in the district or city and county for which a municipal or justice court is established shall, if eligible, become the judges of the municipal or justice court until the election or appointment and qualification of their successors. The time for election and qualification of their successors shall be that previously fixed for the election and qualification of their successors for the court and office superseded, had such courts not been superseded, but in no event shall that election of successors be held within 10 months of succession to the office of the new court.

"(b) If the number of eligible incumbent judges who have not filed a written statement with the county elections official disclaiming their desire to succeed to office exceeds the number of judicial offices provided by law for the municipal or justice court, the incumbents shall not automatically succeed to judicial positions in the municipal or justice court, and the existing courts shall continue to function within the district until the first judge or judges of the municipal or justice court are elected by the qualified electors of the district at the first statewide general election held following the expiration of 90 days and qualify.

"In any election for the first judge or judges of that municipal or justice court, only those incumbents may appear on the ballot and be elected, and Article 1 (commencing with Section 8200) of Chapter 2 of Division 8 of the Elections Code shall not apply. If only one incumbent is to be elected, the incumbent receiving the highest number of votes cast shall be declared elected. If two or more incumbents are to be elected, those incumbents equal in number to the number to be elected who receive the highest number of votes for the office shall be declared elected. The incumbents elected shall become the judges of the municipal or justice court until the election or appointment and qualification of their successors. The time for election and qualification of their successors shall be that previously fixed for the election and qualification of their successors for the court and office superseded, had the courts not been superseded, but in no event shall that election of successors be held within 10 months of succession to the office of the new court."[3]

Section 71180 provides in part:

"(a) Any vacancy in the office of judge of a municipal court shall be filled by appointment by the Governor, but no vacancy shall be deemed to exist in any office before the time fixed in Sections 71080, 71082, and 71083 for the selection of the

---

[3]Section 71081 concerns judges who become eligible to more than one office and their selection of which court upon which to serve.

judges of that court and the time fixed by law for their qualification.  The appointee shall hold office for the remainder of the unexpired term of his or her predecessor and until his or her successor is elected and qualifies.

"If the office to which any person so appointed was not previously occupied, he or she shall hold office until his or her successor is elected at the general state election next succeeding the occurrence of the vacancy and qualifies.  No successor to the appointee shall be elected at any election held within 10 months of the date of the occurrence of the vacancy."

If a new municipal court was established on January 1, 1995, in Trinity County by the adoption of Proposition 191 for purposes of section 71084, no vacancy in that court arose or existed on January 3, 1995, when the incumbent's term expired; the provisions of section 71080 would therefore govern.  (§ 71180; see *Phelps* v. *Brennan* (1976) 16 Cal.3d 508; cf. *Caldwell* v. *Bruning* (1966) 64 Cal.2d 111.) Furthermore, the election in 1994 could not be deemed to have been the election for the "new" municipal court.  Absent a special law, the "time for the election and qualification of the successor" for the superseded judicial office, as stated in section 71080, is to be given *prospective* operation.  (See *Phelps* v. *Brennen, supra,* 16 Cal.3d at 512.)   Thus, pursuant to section 71080, the incumbent judge as of January 3, 1995, would have the right to remain in office.

However, in our view section 71180 and the related statutes do not govern here.   These statutes concerning the succession of justice and municipal courts were intended to operate under a different judicial system, which included justice courts and the discretion of boards of supervisors to redistrict their counties and change justice courts to municipal courts and vice-versa.  As we stated in 67 Ops.Cal.Atty.Gen. 296, 299-300 (1984):

". . . Under the provisions of article VI, section 5 of the California Constitution, as implemented by statute (see Gov. Code. § 71040) boards of supervisors are empowered as public convenience requires to divide the county into judicial districts. The net effect of such districting is to create or abolish municipal or justice courts and their attendant judgeships.  As we explained in 62 Ops.Cal.Atty.Gen. 32 (1979), the board of supervisors has wide discretion as to the division or consolidation of districts when it redistricts.   It may do so at any time, whether during an election year, during a nonelection year, during the term of incumbents, or at the end of their terms.   In so doing it can create or abolish courts and their attendant judgeships. . . ."   (Fn. omitted.)

Proposition 191, on the other hand, abolishes justice courts and provides for its own future implementation by the Legislature.

The rules for interpreting constitutional amendments are well established. "When construing a constitutional provision enacted by initiative, the intent of the voters is the paramount consideration."  (*Davis* v. *City of Berkeley* (1990) 51 Cal.3d 227, 234; see *San Francisco Taxpayers Assn.* v. *Board of Supervisors* (1992) 2 Cal.4th 571, 578-580.)   In discerning the intent of the people in adopting initiative measures, the ballot pamphlet may be used as an aid.  (See *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 349; *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization*

(1978) 22 Cal.3d 208, 245-246; *White* v. *Davis* (1975) 13 Cal.3d 757, 775, fn. 11.) Here, the ballot pamphlet describes the steps previously taken (primarily through the approval of Proposition 91 at the November 1988 general election) to equalize the administration of justice in rural areas, such as equalizing the jurisdiction of municipal and justice courts, requiring judges of the two courts to have the same legal experience, granting judgments of these courts equal footing, and making the judges of both courts full-time judges with equal terms of office. The proponents of Proposition 191 explained:

"All of these changes have proven extremely successful. The full time justice court judges' program saved the state the cost of more than two dozen new judgeships!

"Proposition 191 neither increases nor decreases the current number of judges, courts, or judicial districts. But the time has come to reflect the full compliance of justice courts with the standards of municipal courts by granting them the same title. The label `municipal court' commands greater respect than the designation `justice court,' and will increase respect for the court's authority. As the courts come to grips with the increased work required to put the `3 strikes' felony sentencing legislation into effect, the terms used in our courts should not raise doubts that erect barriers to the use of all available judges.

"Under Proposition 191, Californians who appear in any of the 47 remaining justice courts will no longer be given the false impression that they are receiving a second-class brand of justice. Your Yes vote helps California fulfill the voter mandate to provide citizens in our state's less populous counties with courts of equal stature and judges of equal quality to those found in Los Angeles, San Francisco, and other cities." (Supp. Ballot Pamp., Gen. Elec. (Nov. 8, 1994), argument in favor of Prop 191, p. 16.)

Accordingly Proposition 191 was not intended to "establish" new municipal courts in the sense used in section 71084 and the related statutes. This was not the situation of two different types of local courts continuing to exist with various organizational consequences. Rather, the constitutional amendment was intended to abolish justice courts, changing them into municipal courts by operation of law.

In effect Proposition 191 was adopted to change the name and status of justice courts without changing their existing officers and personnel. As of January 1, 1995, "all existing justice courts shall become municipal courts, and the number, qualification, and compensation of judges, officers, attaches, and employees shall continue until changed by the Legislature." (Cal. Const., art VI, § 5, subd. (b).) On January 3, 1995, the non-incumbent candidate-elect for the justice court office in Trinity County thus became the municipal court judge, since he had qualified for office by his election. The will of the people as expressed at the June 1994 primary election was also thereby effectuated by his assuming office. The voters at the November 1994 general election who approved Proposition 191 had no contrary intention; instead, they intended to continue such qualification for office "until changed by the Legislature."

In answer to the question presented, therefore, we conclude that a non-incumbent candidate for the office of justice court judge elected at the June 1994 primary election for the term

commencing on January 3, 1995, is entitled to the office of municipal court judge commencing on January 3, 1995.

* * * * *